**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| STACK STACKHOUSE a/k/a WILLIAMS, | : | Civil Action No. 07-5502 (JAG) |
|  | : |  |
| Plaintiff, | : | **OPINION** |
|  | : |  |
| v. | : |  |
|  | : |  |
| CITY OF EAST ORANGE, et al., | : |  |
|  | : |  |
| Defendants. | : |  |

---

**APPEARANCES:**

  Stack Stackhouse (a/k/a Williams), SBI # 226804B
  Plaintiff Pro Se
  Essex County Correctional Facility
  Newark, New Jersey  07105

**GREENAWAY, JR., District Judge**

  Plaintiff, Stack Stackhouse ("Plaintiff"), a prisoner currently confined at Essex County Correctional Facility, Newark, New Jersey, seeks to bring this 42 U.S.C. § 1983 action in forma pauperis, without prepayment of fees, pursuant to 28 U.S.C. § 1915(a).  Plaintiff submitted for filing his complaint ("Complaint"), together with a complete application to proceed in forma pauperis.  This Court shall grant Plaintiff in forma pauperis status and will direct the Clerk to file Plaintiff's Complaint.

  For the reasons stated below, this Court will dismiss all of

1

Plaintiff's claims, except for his Fourth Amendment claims, for failure to state a claim upon which relief can be granted or as premature.  Plaintiff's Fourth Amendment claims will be permitted to proceed.

**BACKGROUND**

Plaintiff's nineteen-page Complaint consists of sixty-eight paragraphs (some including up to eleven sub-paragraphs) and indicates his intention to state the following six broad categories of allegations:

**I.   Allegations Related to the Actions of Police Officers**

Plaintiff asserts that on February 11, 2006, he was approached by Defendants Boyd, Fletcher, and Licausi, each of whom is a police officer in Essex County; they "tackled [him] and placed handcuffs on him [while] yelling[,] 'Where's the gun!'" (Compl. ¶ 23).  Plaintiff further alleges that, "[d]uring the time of [his] arrest, members of the East Orange Police Department and defendants Robinson, Hinton, Reed, Grant, Ricks and others [unspecified police officers] illegally entered the plaintiff's apartment . . . and illegally confiscated [his] personal effects." (Id. ¶ 26.)  Finally, Plaintiff asserts that Officer Hinton: (1) fabricated the incident report associated with Plaintiff's arrest, and (2) committed perjury during Plaintiff's suppression hearing, while Officer Mendez committed perjury during Plaintiff's Wade hearing.  (Id. ¶¶ 27, 32.)

2

Plaintiff also alleges that Officers Robinson, Hinton, Reed, Grant, Ricks, Mendez, Boyd, Fletcher and Licausi violated Plaintiff's constitutional rights, and that the City of East Orange ("City") and its Police Department ("Police Department") also violated his rights because they "condoned and ratified the deprivation of rights by . . . police officers by failing to corect [sic] their unlawful actions[,] thereby instituting a policy, procedure, practice or custom to deprive the rights of a people inorder [sic] to make arrests especially of minorities." (Id. ¶ 46; see also id. ¶¶ 54, 57, 61.)

## II. Allegations Related to the Public Defender's Actions

It appears from the Complaint that, following his arrest, Plaintiff's case was initially assigned to Defendant Dennis Cleary ("Cleary"), a public defender at the Office of Public Defender of Essex County ("Public Defender's Office"), and then reassigned to another public defender, Donna Scocozza. (Id. ¶¶ 30-31). Plaintiff asserts that Cleary refused his request to: (1) make a motion for a Wade hearing (the motion was eventually made by Scocozza), and (2) bring Plaintiff's "two[-]page letter along with exculpatory evidence of documents explaining some facts" of Plaintiff's criminal case to the attention of the judge presiding over Plaintiff's criminal proceedings. (Id. ¶¶ 30-31.) Plaintiff alleges that Cleary and the Public Defender's Office, along with other officials, violated his rights "by continuing to

3

deprive the rights of minorities . . . by failing to correct this policy, procedure[], custom and/or practice." (<u>Id.</u> ¶ 57; <u>see also id.</u> ¶ 61.)

**III. Allegations Related to the Prosecutor's Actions**

Plaintiff also asserts that Defendant Linda Childswift ("Childswift"), an assistant prosecutor at the Office of the Essex County Prosecutor ("Prosecutor's Office"), violated his rights by: (1) failing to bring Plaintiff's "two[-]page letter along with exculpatory evidence of documents explaining some facts" of Plaintiff's criminal case to the attention of the judge presiding over Plaintiff's criminal proceedings, (2) orchestrating an unspecified conspiracy scheme under which Officer Mendez perjured himself during Plaintiff's <u>Wade</u> hearing and the judge presiding over Plaintiff's criminal proceedings excluded testimony by a victim of Plaintiff's alleged criminal offense, which Plaintiff, apparently, perceived as favorable to his defense, and (3) requesting re-scheduling of an oral argument from February 2, 2007, to February 5, 2007. (<u>Id.</u> ¶ 30, 32, 33-34.)

Plaintiff alleges that Childswift and the Prosecutor's Office violated his rights because they, along with the other Defendants, "condoned and ratified the deprivation of rights by . . . police officers by failing to correct their unlawful actions[,] thereby instituting a policy, procedure, practice or

4

custom to deprive the rights of a people inorder [sic] to make arrests especially of minorities." (<u>Id.</u> ¶ 46; <u>see also id.</u> ¶¶ 54, 61.)

**IV. Allegations Related to Judge Harold W. Fullilove**

Plaintiff also maintains that Defendant Judge Fullilove ("Judge") violated his rights because the Judge, while presiding over Plaintiff's criminal proceedings, excluded the testimony, which Plaintiff perceived as favorable to his defense, and re-scheduled an oral argument from February 2, 2007, until February 5, 2007. Plaintiff, therefore, alleges that the Judge and Defendant Essex County Courthouse ("Courthouse") violated his rights "by continuing to deprive rights of minorities in order to effectuate arrests and by failing to correct this policy, procedure[], custom and/or practice." (<u>Id.</u> ¶ 57; <u>see also id.</u> ¶ 61.)

**V. Allegations Against Recipients of Plaintiff's Letters**

In addition, Plaintiff alleges that the following Defendants are liable to him because they did not respond to his letters. Plaintiff asserts that each of the letters allegedly contain exculpatory evidence. Further, Plaintiff sent the letters "for viewing regarding this serious issue" to (1) Judge Fullilove, who was presiding over Plaintiff's criminal proceedings, (2) Defendant Robert Bowser, the mayor of the City of East Orange,

(3) Defendant Stuart Rabner,[1] then acting Attorney General for
the State of New Jersey, and (4) Defendant Paula Dow, the
Prosecutor for Essex County.  (Id. ¶¶ 30, 35-36, 38.)

**VI.  Allegations Against All Defendants**

Finally, supplementing the above-discussed specific
allegations, Plaintiff asserts that all of the above-listed
Defendants, as well as Defendants Stephen Young, assistant deputy
prosecutor for Essex County, unspecified "Special Deputy Attorney
General for the State of New Jersey," "John Doe Police Officers
and Detectives 1-x," "Jane Roe Police Officers and Detectives 1-
x" and "ABC Corporation[s] 1-x" are liable to him for the
following actions:[2]

    a.  Depriving [him] of his constitutional right to
        equal protection of the laws as those enjoyed by
        white persons;
    b.  Depriving [him] of his right not to be unlawfully
        arrested;
    c.  Depriving [him] of his right not to be unlawfully
        imprisoned;
    d.  Depriving [him] of his . . . right to . . . due
        process of law;
    e.  Failing to corect [sic] the unconstitutional and

---

[1] Plaintiff spells defendant Stuart Rabner's name in a
variety of ways, including Stewart Rabner and Stewart Rabaner.
Recognizing to whom Plaintiff is referring, this Court will spell
Mr. Rabner's name correctly.

[2] The Complaint is silent as to the specific facts upon
which Plaintiff asserts that Defendants Stephen Young, assistant
deputy prosecutor for Essex County, unspecified "Special Deputy
Attorney General for the State of New Jersey," "John Doe Police
Officers and Detectives 1-x," "Jane Roe Police Officers and
Detectives 1-x" and "ABC Corporation[s] 1-x" are liable to
Plaintiff.  (See generally, Compl.)

6

discriminatory practices of subordinates;

    f.    Failing to supervise/control subordinates with history or [sic] misbehavior;

    g.    Continually condoning and ratifying a history of unconstitutional and discriminatory acts . . . ;

    h.    Improperly screening, hiring, training, supervising, disciplining and retraining inane inadequate police officers, detectives, and City/State employees;

    i.    Depriving [him] of his right not to be subjected to an unlawful entry of his home;

    j.    Depriving [him] of his right not to be subjected to an illegal confiscation of his properties [sic];

    k.    Maliciously prosecuting [him].

(Id. ¶ 41.) Plaintiff seeks compensatory damages in the amount of $40,000,000 and punitive damages in the amount of $40,000 from each Defendant, as well as attorneys' fees and costs in prosecuting his pro se action.

<strong><u>DISCUSSION</u></strong>

**A.  <u>Standard of Review</u>**

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996). Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous." <u>Santana v. United States</u>, 98 F.3d 752, 755 (3d Cir. 1996). A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b),

that a court must dismiss, at the earliest practicable time, any
prisoner actions that are frivolous or malicious, fail to state a
claim, or seek monetary relief from immune defendants.

In determining the sufficiency of a complaint, the Court
must be mindful to construe it liberally in favor of the
plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United
States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should
"accept as true all of the allegations in the complaint and
reasonable inferences that can be drawn therefrom, and view them
in the light most favorable to the plaintiff."  Morse v. Lower
Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  This
Court need not, however, lend credit to a pro se plaintiff's
"bald assertions" or "legal conclusions."  Id.  Thus, "[a] pro se
complaint may be dismissed for failure to state a claim only if
it appears 'beyond doubt that the plaintiff can prove no set of
facts in support of his claim which would entitle him to
relief.'"  Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981)
(quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).

**B.  Allegations That Fail to Present Viable Claims**

**1.    Claims Against Immune Entities and Non-entities**

None of Plaintiff's allegations against the Judge and
prosecutor Childswift presents a viable claim.  The Judge is

absolutely immune from suit under 42 U.S.C. § 1983.[3]  "[J]udges .
. . are not liable to civil actions for their judicial acts, even
when such acts are in excess of their jurisdiction, and are
alleged to have been done maliciously or corruptly." Figueroa v.
Blackburn, 208 F.3d 435, 440 (3d Cir. 2000) (quoting Stump v.
Sparkman, 435 U.S. 349, 355-6 (1978)).  Because the alleged
wrongdoing by the Judge consists of judicial acts which are
absolutely protected from suit for damages under § 1983, all of
Plaintiff's claims against the Judge will be dismissed, with
prejudice.

Plaintiff's claims against Defendant Childswift, the

---

[3] The Eleventh Amendment provides that the "[j]udicial power
of the United States shall not be construed to extend to any suit
in law or equity, commenced or prosecuted against one of the
United States by Citizens of another State, or by Citizens or
Subjects of any Foreign State."  U.S. Const. amend. XI.  "This
immunity is based on a two-part presupposition:  (1) each State
is a sovereign entity in our federal system and (2) it is
inherent in the nature of sovereignty not to be amenable to the
suit of an individual without its consent."  In re Sacred Heart
Hosp. of Norristown v. Pennsylvania Dept. of Public Welfare, 133
F.3d 237, 241-42 (3d Cir. 1998) (citations and internal quotation
marks omitted).  The Eleventh Amendment has been interpreted as
preventing suits in federal court against states, or state
officials (if the state is the real party in interest), including
the state judiciary.  See Hindes v. Federal Deposit Insurance
Corp., 137 F.3d 148 (3d Cir. Feb. 19, 1998).  It is settled that
"an official-capacity suit against a state officer is not a suit
against the official but rather is a suit against the official's
office.  As such it is no different from a suit against the State
itself." Hafer v. Melo, 502 U.S. 21, 26 (1991) (citation and
internal quotation marks omitted).  Accordingly, the Eleventh
Amendment bars Plaintiff's claims against the judge presiding
over Plaintiff's criminal proceedings, and these claims should be
dismissed.

prosecutor of Plaintiff's underlying criminal case, are similarly barred because prosecutors are also absolutely immune from actions under § 1983 for "initiating and pursuing a criminal prosecution." Kalina v. Fletcher, 522 U.S. 118 (1997) (quoting Imbler v. Pachtman, 424 U.S. 409 (1976)). As such, these claims will be dismissed, with prejudice.

Plaintiff's claims against his public defender are also without merit. To recover against a defendant under 42 U.S.C. § 1983, a plaintiff must establish that the defendant acted under "color of [state] law" to deprive him of a right secured by the federal Constitution or laws. See Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Section 1983 does not create substantive rights; rather, it provides an avenue of recovery for the deprivation of established federal constitutional and statutory rights. See Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996); Groman, 47 F.3d at 633. "The color of state law . . . is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law." Id. at 638.

The color of state law element in a section 1983 action requires that "the conduct allegedly causing the deprivation of [the plaintiff's rights] be fairly attributable to the State." Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982). For the conduct to be "fairly attributable" to the State, (1) the deprivation must be caused by (a) the exercise of some right or

privilege created by the State or (b) by a rule of conduct imposed by it or by a person for whom the State is responsible, and (2) the defendant must be a person who may fairly be said to be a state actor, either because the person (a) is a state official, (b) acted together with or has obtained significant aid from state officials, or (c) performed conduct otherwise chargeable to the State. See id. at 936-39.

Neither a privately retained counsel nor a court-appointed public defender who performs a lawyer's traditional function as counsel to a defendant in a criminal proceeding could be deemed as acting under color of law. See Polk County v. Dodson, 454 U.S. 312, 325 (1981). Whether court-appointed or privately retained, a defense attorney represents only her client and not the state. See Johnson v. Kafrissen, 1995 U.S. Dist. LEXIS 8072, at *2 (E.D. Pa. June 5, 1995). Since all of Plaintiff's allegations against Defendant Cleary unambiguously indicate that they are based on Cleary's actions in his capacity as Plaintiff's counsel, Plaintiff's claims against Defendant Cleary shall be dismissed, with prejudice, for failure to satisfy the color of law requirement.

In addition, Plaintiff's allegations against the Police Department, Courthouse, Prosecutor's Office, and Public Defender's Office are not cognizable, since these Defendants are not "persons" subject to suit under 42 U.S.C. § 1983. See Will

11

v. Michigan Dep't of State Police, 491 U.S. 58 (1989); Monell v.
Dep't of Social Services of City of New York, 436 U.S. 658, 688-
90 (1978); Martin v. Red Lion Police Dep't, 146 F. App'x, 558,
562 n.3 (3d Cir. 2005); see also Johnson v. Runyon, 1999 U.S.
Dist. LEXIS 5748 (W.D. Mich. Apr. 22, 1999).  Therefore,
Plaintiff's claims against these non-entities will be dismissed,
with prejudice, for failure to state a claim upon which relief
can be granted.

    **2.    Respondeat Superior Claim**

    Supervisors are not liable under § 1983 solely on a theory
of respondeat superior.  See City of Oklahoma City v. Tuttle, 471
U.S. 808, 824 n.8 (1985); Monell, 436 U.S. at 690-91, 694 (1978);
Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-
84 (3d Cir. 2003).  "A defendant in a civil rights action must
have personal involvement in the alleged wrongs, liability cannot
be predicated solely on the operation of respondeat superior.
Personal involvement can be shown through allegations of personal
direction or of actual knowledge and acquiescence." Rode v.
Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations
omitted); accord Robinson v. City of Pittsburgh, 120 F.3d 1286,
1293-96 (3d Cir. 1997).  Therefore, where a plaintiff seeks to
establish liability based on a supervisor's failure to train or
supervise adequately, the plaintiff must allege and show that a
need for more or different training or supervision is so obvious,

and the inadequacy so likely to result in constitutional violations, that the failure to train or supervise can fairly be said to represent official policy.  See City of Canton v. Harris, 489 U.S. 378, 388-92 (1989); Stoneking v. Bradford Area School Dist., 882 F.2d 720, 724-26 (3d Cir. 1989), cert. denied, 493 U.S. 1044 (1990).

In the same vein, a local government entity, e.g., a municipality, "cannot be held liable solely because it employs a tortfeasor." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 691 (1978); see also City of Canton, 489 U.S. at 388-92. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694. "'Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict.'" Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000) (quoting Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996)).

Here, Plaintiff does not allege any fact suggesting that the City had any policy that might have resulted in violation of Plaintiff's constitutional rights. (See generally, Compl.) Rather, Plaintiff substitutes, as a fact, his own circuitous

13

argument based on his presupposition that his constitutional rights were violated, i.e., Plaintiff alleges that, (1) since he believes that his rights were violated, (2) such violation must have resulted from the City's official policy and, therefore (3) the City must have had such policy and should be deemed liable. (See id. ¶¶ 46, 54, 57, 61.)  Unfortunately for Plaintiff, his self-serving circuitous argument cannot be used as a substitute for a factual allegation that the need for more or different training or supervision of any entity employed by the City was so obvious, and the inadequacy was so likely to result in constitutional violations, that the failure to train or supervise could fairly be said to represent the City's official policy. See City of Canton, 489 U.S. at 388-92; Stoneking, 882 F.2d at 724-26.

Plaintiff's allegations against the City, based solely on the doctrine of respondeat superior, are insufficient.  All of these claims must be dismissed for failure to state a claim upon which relief can be granted.  See Monell, 436 U.S. at 691, 694.

### 3.   Other Claims Containing No Factual Allegations

Plaintiff's allegations against Defendants Stephen Young, assistant deputy prosecutor for Essex County, unspecified "Special Deputy Attorney General for the State of New Jersey," "John Doe Police Officers and Detectives 1-x," "Jane Roe Police Officers and Detectives 1-x" and "ABC Corporation[s] 1-x" will

14

also be dismissed since these allegations are limited solely to Plaintiff's conclusions and include no facts indicating that these persons violated Plaintiff's rights in any fashion.[4]

Personal involvement by a defendant is an indispensable element of a valid legal claim. The requisite personal involvement may exist only when the named defendant violated plaintiff's rights either by executing the acts at issue himself or herself, or by directing others to violate the plaintiff's rights (or by tolerating past or ongoing misbehavior of subordinates while having both supervisory power and knowledge of

---

[4] For instance, Plaintiff complains about a violation of his due process rights by unspecified persons. The Due Process Clause of the Fourteenth Amendment of the Constitution of the United States provides: "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Thus, a person is entitled to Due Process of law when government action deprives him or her of life, liberty, or property. See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979). To analyze Plaintiff's Due Process claim, the first step would be to decide whether he was deprived of a liberty or property interest protected by Due Process. See Fuentes v. Shevin, 407 U.S. 67 (1972). If not, it is not necessary to consider what process is due. See Morrissey v. Brewer, 408 U.S. 471 (1972). Since Plaintiff could be entitled to Due Process only if he had a protected liberty interest in avoiding a certain harm, he cannot state a due process claim since his Complaint fails to specify the harm. Moreover, even if the Court were to hypothesize that his potential criminal conviction is the "harm" that Plaintiff wishes to complain about, this Court cannot assume that the state procedures would not afford him an adequate due process remedy. See Kelm v. Hyatt, 44 F.3d 415, 420 (6th Cir. 1995) (citing Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 17 (1987)) ("Initially, we must presume that the state courts are able to protect the interests of the federal plaintiff"). Plaintiff's due process allegations are void of any facts and cannot be construed as a cognizable claim.

these constitutional violations).  See Baker v. Monroe Township, 50 F.3d 1186, 1190-91 (3d Cir. 1995); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Conversely, where no personal involvement by the defendant in the alleged wrong is asserted, the plaintiff's claim against that defendant is subject to dismissal.  See Rode, 845 F.2d at 1207.

Here, Plaintiff's Complaint does not indicate that Defendants Young, "Special Deputy Attorney General for the State of New Jersey," "John Doe Police Officers and Detectives 1-x," "Jane Roe Police Officers and Detectives 1-x" and "ABC Corporation[s] 1-x" were involved in the events underlying Plaintiff's claims.  Plaintiff's allegations against these persons shall be dismissed.

### 4.  Allegations Based on Non-responses to Plaintiff's Letters

Plaintiff alleges that Defendants Robert Bowser, Stuart Rabner and Paula Dow violated his constitutional rights by not responding to his letters.  This Court shall interpret these allegations as a First Amendment claim asserting a violation of the Petition Clause.  Ultimately, Plaintiff's allegations fail to state a claim because the right to petition the government for redress of grievances does not include the right to receive a response from a particular official.  See Minnesota State Bd. for Community Colleges v. Knight, 465 U.S. 271, 285 (1984).  "Nothing in the First Amendment or in . . . case law interpreting it

16

suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals communications." <u>Id.</u>; <u>see also Foraker v. Chaffinch</u>, 501 F.3d 231, 237 (3d Cir. 2007) (pointing out that the courts "have never held . . . that a report of a . . . misconduct . . . constitutes 'petitioning activity'" and citing <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 230-32 (3d Cir. 2006)); <u>Bieregu v. Reno</u>, 59 F.3d 1445, 1453 n.3 (3d Cir. 1995) (noting that, "[a]t the founding, the Petition Clause also implied a congressional duty to respond . . . .   In the Civil War era, however, Congress enacted rules abolishing the duty to respond, a change later sanctioned by the Supreme Court," and citing, <u>inter alia</u>, <u>Smith v. Arkansas State Highway Employees</u>, 441 U.S. 463, 465 (1979) (per curiam) (constitution does not require government "to listen [or] to respond" to citizen petition), and <u>Minnesota State Bd.</u>)

If this Court were to interpret Plaintiff's allegations as a claim that he was submitting administrative grievances that had not been responded to, the allegations would also fail to qualify as a cognizable claim, since there is no Fourteenth Amendment right empowering movants to force officials to investigate or entertain administrative grievances.  <u>See</u>, <u>e.g.</u>, <u>Wilson v. Horn</u>, 971 F. Supp. 943, 947 (E.D. Pa. 1997), <u>aff'd</u>, 142 F.3d 430 (3d Cir. 1998); <u>McGuire v. Forr</u>, No. 94-6884, 1996 U.S. Dist. LEXIS 3418 at *2, n.1 (E.D. Pa. Mar. 21, 1996), <u>aff'd</u>, 101 F.3d 691 (3d

Cir. 1996).

Plaintiff's allegations based on alleged non-responses to his letters shall be dismissed for failure to state a claim upon which relief can be granted.

**B.    Allegations Against Police Officers**

Plaintiff's Complaint, regarding the police officer Defendants, asserts that they violated Plaintiff's rights because they: (1) "[d]epriv[ed him] of his constitutional right to equal protection of the laws as those enjoyed by white people," (2) "[d]epriv[ed him] of his right not to be unlawfully arrested or imprisoned [or] subjected to an unlawful entry of his home," (3) "[d]epriv[ed him] of his right not to be subjected to an illegal confiscation of his property," and (4) "[m]aliciously prosecut[ed him]." (Compl. ¶ 41).

**1.    Equal Protection Allegations**

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.  This is not a command that all persons be treated alike, but, rather, a direction that all persons similarly situated be treated alike.  See City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439  (1985). "The Equal Protection Clause commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.'" Vacco v. Quill, 521 U.S. 793, 799 (1997).  "The central

18

purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race," Washington v. Davis, 426 U.S. 229, 239 (1976), or any other suspect classification. See, e.g., Bakke v. California Bd. of Regents, 438 U.S. 265, 291 (1978) ("the guarantee of equal protection cannot mean one thing when applied to one individual and something else when applied to a person of another color" and "racial and ethnic distinctions of any sort are inherently suspect and thus call for the most exacting judicial examination").

Here, Plaintiff's equal protection claim is limited solely to his conclusion that the police officers "[d]epriv[ed him] of his constitutional right to equal protection of the laws as those enjoyed by white people." (Compl. ¶ 41). Plaintiff fails to allege a dichotomy in treatment by the offending officers between he, on one hand, and similarly situated whites on the other hand. Specifically, the Complaint appears to allege discrimination on the basis of race, but does not indicate that the Defendant police officers have engaged in a practice of avoiding to ask non-African-American suspects, "Where is the gun?" or avoiding to arrest non-African-American suspects, or avoiding to search the homes of non-African-American suspects.

Since Plaintiff's factual allegations appear to be limited to his self-serving conclusion, these allegations will be

dismissed.  <u>See</u> <u>Morse</u>, 132 F.3d at 906 (the court need not lend credit to a <u>pro</u> <u>se</u> plaintiff's "bald assertions" or "legal conclusions").

**2.   Loss of Property Allegations**

As stated above, the Due Process Clause prohibits a state or local government from depriving a person of property without providing due process of law.  <u>See</u> <u>Greenholtz</u>, 442 U.S. at 7.  To analyze a due process claim, this Court conducts a "familiar two-part inquiry": this Court determines whether the Plaintiff "was deprived of a protected interest, and, if so, what process was h[e] due." <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422, 428 (1982); <u>see also</u> <u>Holman v. Hilton</u>, 712 F.2d 854, 858 (3d Cir. 1983).

Although Plaintiff has a property interest in the personal artifacts that were allegedly taken by the Defendant police officers from his apartment, his due process claim nevertheless fails as a matter of law because the New Jersey Tort Claims Act provides all the process that is due.

The Third Circuit held in <u>Tillman v. Lebanon County Correctional Facility</u>, 221 F. 3d 410, 421 n.12 (3d Cir. 2000) that the Due Process Clause does not require prison officials to conduct pre-deprivation hearings when they deduct fees from prisoners' wages because, "if the available postdeprivation procedure is adequate, then that is all the process to which the

20

[prisoner] is due under these circumstances." See also Zinermon v. Burch, 494 U.S. 113, 115 (1990); Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Holman, 712 F.2d at 856.

The New Jersey Tort Claims Act ("NJTCA"), N.J. Stat. Ann. § 59:1-1 et seq., provides an adequate post-deprivation judicial remedy to persons, including inmates such as Plaintiff, who believe they were wrongfully deprived of property at the hands of prison officials. See Holman, 712 F.2d at 857; Asquith v. Volunteers of America, 1 F. Supp.2d 405, 419 (D.N.J. 1998), aff'd 186 F.3d 407 (3d Cir. 1999). Because the NJTCA is an available remedy providing all the process which is due, Plaintiff's claims against Defendants Robinson, Hinton, Reed, Grant and Ricks based on loss of Plaintiff's property must fail. This Court is constrained, based on this analysis, to dismiss these allegations for failure to state a claim upon which relief can be granted.[5]

### 3.    Perjury Allegations

Plaintiff also asserts that Officers Hinton and Mendez committed perjury during various hearings related to Plaintiff's criminal proceedings. However, the allegations regarding false

---

[5] Notably, Plaintiff does not allege that police officers searched his apartment without a warrant or probable cause. Rather, he limits his allegations to asserting that the search of his apartment amounts to a loss of property claim.

testimony fail and must be dismissed because a witness enjoys
absolute immunity from damages under § 1983 for false testimony.
See Briscoe v. LaHue, 460 U.S. 325, 330-46 (1983) (holding that
an officer testifying in a criminal trial enjoys absolute witness
immunity for false testimony and explaining that public policy
supports absolute immunity because the subjection of police
officers to damages liability under § 1983 could have undermined
their contribution to the judicial process and the effective
performance of their other public duties); Kulwicki v. Dawson,
969 F.2d 1454, 1467 (3d Cir. 1992) (witness testifying in
judicial proceeding is absolutely immune for false testimony);
Williams v. Hepting, 844 F.2d 138, 143 (3d Cir. 1988) (witness is
entitled to absolute immunity from civil liability under § 1983
for perjured testimony at preliminary hearing and suppression
hearings).

### 4.   Malicious Prosecution Allegations

To prevail on malicious prosecution claims brought under
§ 1983 for violation of Fourth Amendment rights, a plaintiff must
show that: "(1) the defendant initiated a criminal proceeding;
(2) the criminal proceeding ended in [the plaintiff's] favor; (3)
the defendant initiated the proceeding without probable cause;
(4) the defendant acted maliciously or for a purpose other than
bringing the plaintiff to justice; and (5) the plaintiff suffered
deprivation of liberty consistent with the concept of seizure as

22

a consequence of a legal proceeding." Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007); see also Albright v. Oliver, 510 U.S. 266 (1994).

Here, the Complaint makes it clear that Plaintiff's criminal proceedings were underway at the time of submission of his Complaint and, it appears, the criminal action is still pending. Thus, Plaintiff's malicious prosecution allegations do not amount to a cognizable claim, since he cannot show that his criminal proceedings ended in his favor.

### 5.   False Arrest and Imprisonment Allegations

Finally, Plaintiff's Complaint appears to allege that Plaintiff was arrested and imprisoned without probable cause by Defendants Boyd, Fletcher and Licausi.  Also, Defendant Hinton, purportedly, falsified Plaintiff's Incident Report, asserting that probable cause existed at the time of Plaintiff's arrest, when none existed.  See Compl. ¶¶ 23-27.

The Third Circuit has established that an arrest without probable cause is a Fourth Amendment violation actionable under § 1983.[6]  See Walmsley v. Philadelphia, 872 F.2d 546 (3d Cir. 1989)(citing cases); see also, Albright v. Oliver, 510 U.S. 266,

_____

[6]  Parenthetically, the Supreme Court of the United States recently clarified that "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."  Wallace v. Kato, 127 S.Ct. 1091, 1100 (2007).

274 (1994)(a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures).

Under New Jersey law, false arrest has been defined as "the constraint of the person without legal justification." Ramirez v. United States, 998 F. Supp. 425, 434 (D.N.J. 1998) (quoting Fleming v. United Postal Service, Inc., 604 A.2d 657, 680 (N.J. Law Div. 1992)).  To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements: (1) that there was an arrest; and (2) that the arrest was made without probable cause.  See Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988).  To establish the absence of probable cause, a plaintiff must show "that at the time when the defendant put the proceedings in motion the circumstances were such as not to warrant an ordinary prudent individual in believing that an offense had been committed." Lind v. Schmid, 67 N.J. 255, 262 (1975).  "Probable cause . . . requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt." Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995).  Rather, probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. State of Ohio,

24

379 U.S. 89, 91 (1964)).

Moreover "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest," for the period of incarceration lasting from arrest until the first legal action, e.g., an arraignment. <u>Groman v. Manalapan</u>, 47 F.3d 628, 636 (3d Cir. 1995). Indeed, the Supreme Court of the United States recently noted that, "[f]alse arrest and false imprisonment overlap; the former is a species of the latter." <u>Wallace v. Kato</u>, 127 S. Ct. 1091, 1095 (2007).

Since the Complaint alleges that Plaintiff was merely walking to a store when he was arrested, the allegations appear to provide sufficient notice as to his false arrest and imprisonment claims.  Consequently, <u>sua</u> <u>sponte</u> dismissal of Plaintiff's Fourth Amendment claims is not warranted at present. Plaintiff may press these claims to the next stage of litigation.  <u>See</u> <u>Alston</u>, 363 F.3d 229, 233 n.6 (3d Cir. 2004) (stating that at the pleading stage, a plaintiff need only make out a claim upon which relief can be granted, and that if more facts are necessary to resolve the dispute, the parties may avail themselves of discovery mechanisms).

**CONCLUSION**

For the reasons set forth above, Plaintiff's allegations against Defendants City of East Orange, Mayor Robert L. Bowser, East Orange Police Department, Stuart Rabner, unidentified Special Deputy Attorney General, Office of the Essex County Prosecutor, Paula T. Dow, Linda Childswift, Stephen Young, Office of the Essex County Public Defender, Dennis Cleary, Hon. Harold W. Fullilove, John Doe Police Officers and Detectives 1-x, Jane Roe Police Officers and Detectives 1-x, ABC Corporations 1-x, Officers Robinson, Reed, Grant, Ricks and Mendez, as well as Essex County Courthouse will be dismissed as premature or for failure to state a claim upon which relief can be granted. Plaintiff's Fourth Amendment claims against Defendants Hinton, Boyd, Fletcher and Licausi asserting false arrest and imprisonment shall proceed.

An appropriate Order accompanies this Opinion.


 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.


Dated: November 6, 2008