NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

STACK STACKHOUSE,                          :
                                           :          **Hon. Dennis M. Cavanaugh**
                    Plaintiff,             :
                                           :                **OPINION**
            v.                             :
                                           :          Civil Action No. 07-05502 (DMC)(JAD)
CITY OF EAST ORANGE, et al,                :
                                           :
                    Defendants.            :
                                           :

DENNIS M. CAVANAUGH, U.S.D.J.:

       This matter comes before the Court upon Defendants' Ronald F. Fletcher[1], Robert Licausi,

Charles E. Hinton, and Maurice Boyd (collectively "Defendants" or "Police Officers") Motion for

Summary Judgment pursuant to FED. R. CIV. P.56(c) and Plaintiff's Motion for Summary Judgment

pursuant to FED. R. CIV. P.56(c).  Pursuant to FED. R. CIV. P. 78, no oral argument was heard.  After

carefully considering the submissions of the parties, and based upon the following, it is the finding

of this Court that Defendant's Motion for Summary Judgment is **granted** and Plaintiffs' motion for

Summary Judgment is **denied**.

---

       [1]By letter dated September 15, 2011 Defense Counsel Brenda Coppola Cuba notified this
court that Officer Fletcher passed away during the pendency of this Motion.  To date there has
been no motion for substitution submitted to this Court.  As ninety (90) days have passed from
the notification of death, this action is dismissed as against Defendant Fletcher pursuant to FED
R. CIV. P. 25(a)(1).

I.    **BACKGROUND**[2]

The claims at issue arise out of the arrest of Plaintiff Stack Stackhouse ("Plaintiff") on or about February 11, 2006. (Pl.'s Compl. ¶ 23).[3]  Plaintiff's arrest was made after the East Orange Police Department responded to a reported car jacking of a silver Nissan Altima with Pennsylvania license plates that occurred outside of a convenient store in East Orange, New Jersey at approximately 8:21 p.m. At the scene of the theft the Police Officers were informed that the car was stolen while the owner was inside the store and the passenger waited inside the car.  The passenger was reportedly approached by a black male with a dark complexion, approximately 5'8", weighing between 160-170 pounds, with a beard and mustache.  The man opened the driver side door, brandished a gun and demanded to know where the purses were.  The man then ordered the passenger to get out of the car.  The passenger ran into the store and the suspect fled in the vehicle. The owner of the vehicle indicated that while in the store she had seen a man matching a similar description to that given by the car's passenger.  Both witnesses indicated to the Police Officers that they would be able to positively identify the suspect.  All East Orange Police Personnel were then notified by dispatch of the car jacking and provided with a description of the vehicle.

At approximately 10 p.m. the vehicle was spotted by an East Orange Police sergeant parked on Freeman Avenue.  Multiple law enforcement officers responded to the scene and proceeded to conduct a visual surveillance of the vehicle.  At approximately 11 p.m., Plaintiff was spotted walking

---

[2] The facts set-forth in this Opinion are taken from the Parties' statements in their respective moving papers.

[3] The facts regarding the events leading up to the arrest are taken from the Defendant's pleadings and reports.  Plaintiff has not raised any challenge to Defendants version of the events that transpired prior to the arrest.

with a female companion along Freeman Avenue in the vicinity of the vehicle.

The parties provide two different accounts regarding the events that transpired next.  For purposes of this Motion for Summary Judgment, in light of the directive that the Court will construe the facts in the light most favorable to the non-moving party, this Court will take Plaintiff's version of the facts as true. Plaintiff maintains that he was walking to a store with a companion when Officers of the East Orange Police tackled and handcuffed him yelling "Where is the gun?".[4] (Pl.'s Compl. ¶ 23).  According to Plaintiff, he was then placed in a police car and held at the scene.[5]  (Pl.'s Compl. ¶ 24).  He was later placed standing by a tree and was shone with a spotlight in execution of a show up identification. (Pl.'s Compl. ¶ 24).  Plaintiff was positively identified by the witnesses and was placed back into the police car and taken to the East Orange Police Station where he was printed and photographed for arrest.[6] (Pl.'s Compl. ¶ 25).  Finally, Plaintiff alleges that three days

---

[4]Defendants provide a distinctly different account of the events that transpired in effectuating the apprehension and arrest of Plaintiff.  However, for purposes of this Motion for Summary Judgment, this Court accepts Plaintiff's version of events as true. Notably, Defendants maintain that Plaintiff was attempting to enter the vehicle at the time he was apprehended and was reported to have the key to the car in his possession at time of apprehension.  Moreover, Defendants' police reports indicate that the woman had actually entered the car at the time of Plaintiff's apprehension.  Plaintiff challenges Defendants' version of events by alleging that the police reports were fabricated following the arrest. However, Plaintiff provides evidence in support of this theory.

[5]Plaintiff does not indicate how long he was held for, but testimony of Officer Fletcher from the New Jersey Superior Court proceeding attached to Plaintiff's Statement Refuting Defendants' Undisputed Facts and Procedural History reveal that Plaintiff was held at the scene for approximately twenty (20) to thirty (30) minutes. See Pl.'s Statement Refuting Defendants' Undisputed Facts and Procedural History.

[6]The testimony of Detective E. Mendez Jr. reveals that prior to the "show-up" identification, the witnesses were taken to the Police Station where they looked at photographs. While at the Station, they were told that the police had recovered the car and had detained someone fitting a possible description.  The witnesses were then brought to the scene.

after Plaintiff's arrest, Defendant Hinton submitted an East Orange Police Department Supplementary Incident Report which was fabricated. (Pl.'s Compl. ¶ 27).

Plaintiff was subsequently tried and convicted of the offense in question in the Superior Court of New Jersey.[7]  On December 17, 2010, the Appellate Division of the New Jersey Superior Court issued an unpublished opinion reversing Plaintiff's criminal convictions on the grounds that the charges against him contained in two different indictments were improperly tried together.  State of New Jersey v. Stack Williams, Docket No. A-3648-07T4 (Def.'s Mot. Summ. J, Ex. A, ECF No. 67-1).  The Appellate Division remanded Plaintiff's case for separate trials.

This case was first filed on November 15, 2007 before Judge Joseph A. Greenaway, Jr., U.S.D.J.[8]  In his Complaint, Plaintiff raised numerous constitutional claims against numerous defendants, arising out of his arrest on or about February 11, 2006.  On November 6, 2008, Judge Greenaway sue sponte dismissed all of Plaintiff's claims, with the exception of his Fourth Amendment claims, on the grounds that they failed to state a claim upon which relief can be granted or were premature.(Greenaway Op., Nov. 6, 2008, ECF No. 3).  The remaining Fourth Amendment claims raise allegations of false arrest and false imprisonment against Defendants Ronald F. Fletcher, Robert Licausi, Charles E. Hinton, and Maurice Boyd (hereinafter "Defendants" or "Police Officers").  Defendant Police Officers now move for summary judgment of Plaintiff's remaining claims.  Plaintiff asserts that he has already provided proof of the alleged violations in his Complaint

---

[7]Defendants suggest that the record reveals that Plaintiff pled guilty in the criminal trails prior to the jury verdict. Plaintiff disputes this fact.

[8]On March 11, 2010, this case was ordered reassigned to Chief Judge Garrett E. Brown Jr., U.S.D.J.  The Case was subsequently reassigned to this Court for all further proceedings on June 30, 2011.

and that the proof provided evidences an ongoing conspiracy towards Plaintiff to deny him of his Human and Civil Constitutional Rights and reveals a lack of credibility on the part of the Defendants and witnesses.[9]

## II.   STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing either (1) there is no genuine issue of fact and it must prevail as a matter of law; or (2) that the non-moving party has not shown facts relating to an essential element of the issue for which he bears the burden. Celotex, 477 U.S. at 331. If either showing is made, the burden shifts to the non-moving party, who must demonstrate facts that support each element for which he bears the burden, as well as the existence of genuine issues of material fact. Id. A material fact is one that might affect the outcome of the case, and a genuine dispute will be found if "the evidence is such that a reasonable jury could return a verdict for the non-moving party". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, FED. R. CIV. P. 56(e), but must produce sufficient evidence to support a jury

---

[9]Plaintiff did not serve a response to Defendant's Motion but rather filed his own motion for summary judgment. As Plaintiff's Motion for Summary Judgment fails to state a basis for granting Summary Judgment in his favor, this Court will treat his motion as a responsive pleading to Defendants' Motion for Summary Judgment.

verdict in his favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The Court will consider all facts and their reasonable inferences in the light most favorable to the non-moving party.

While a court must draw reasonable inferences in the light most favorable to the non-moving party, see Penn. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. Appx. 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)), the non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, See FED. R. CIV. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 586. Rather, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. (internal quotations omitted) "[U]nsupported allegations in memorandum and pleadings are insufficient to repel summary judgment" see Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990), and, conclusory allegations are insufficient to establish genuine issues of fact.  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 902 (1990).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., 475 U.S. at 586.

## III.   DISCUSSION

In support of their motion for summary judgment, Defendant Police Officers raise the following arguments: (1) there is no dispute of material fact as to whether the police officers acted with probable cause; (2) Defendants are protected by qualified immunity; (3) the Complaint should

be dismissed for Plaintiff's failure to cooperate with discovery; and (4) Plaintiff is collaterally estopped from challenging his arrest.

      A.    <u>Plaintiff's Fourth Amendment Claims</u>

Defendants propose that Plaintiff cannot overcome summary judgment as, taking Plaintiff's version of events as true, there is no genuine issue of material fact that probable cause was present at the time of arrest.

To state a claim under 42 U.S.C. § 1983, a plaintiff must show that persons acting under the color of state law violated one or more of plaintiff's constitutionally protected rights.  As previously noted, the only claims that remain from Plaintiff's Complaint are those falling under the Fourth Amendment, namely, false imprisonment and false arrest.   It is well established that an arrest without probable cause constitutes a Fourth Amendment violation and that such claims are actionable under § 1983.  <u>Patzig v. O'Neil</u>, 577 F.2d 841, 848 (1978); <u>Groman v. Twp of Manalapan</u>, 47 F.3d 628, 636 (3d Cir. 1995).

Plaintiff alleges that he was arrested and imprisoned without probable cause by Defendants Boyd, Fletcher, and Licausi. Plaintiff further alleges that Defendant Hinton falsified Plaintiff's Incident Report to assert that probable cause existed at the time of Plaintiff's arrest when none in fact existed.  In the previous proceedings of this case, Judge Greenaway explained the requirements for Plaintiff's prima facie case for a Fourth Amendment violation:

> Under New Jersey law, false arrest has been defined as "the constraint of the person without legal justification." <u>Ramirez v. United States,</u> 998 F.Supp. 425, 434 (D.N.J. 1998) (quoting <u>Fleming v. United Postal Service, Inc.,</u> 604 A.2d 657, 680 (N.J. Law. Div. 1992).  To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements: (1) that there was an arrest; and (2) that the arrest was made without probable cause. <u>See</u> <u>Dowling v. City of Philadelphia</u>, 855 F.2d 136, 141 (3d Cir. 1988).  To establish the absence of

7

probable cause, a plaintiff must show "that at the time when the defendant put the proceedings in motion the circumstances were such as not to warrant an ordinary prudent individual in believing that an offense had been committed." <u>Lind v. Schmid</u>, 67 N.J. 255, 262 (1975). "Probable cause . . . requires more than mere suspicion; however it does not require that the officer have evidence to prove guilt beyond a reasonable doubt." <u>Orsatti v. New Jersey State Police</u>, 71 F.3d 480, 482-83 (3d Cir. 1995). Rather, probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." <u>Gerstein v. Pugh</u>, 420 U.S. 103, 111 (1975) (quoting <u>Beck v. State of Ohio</u>, 379 U.S. 89, 91 (1964))."

(Greenaway Op., Nov. 6, 2008, ECF No. 3).

A finding of false arrest under § 1983 will also give rise to a claim under § 1983 of false imprisonment for any detention that resulted pursuant to the arrest. <u>See</u> <u>Groman v. Twp of Manalapan,</u> 47 F.3d at 636,, citing <u>Thomas v. Kipperman</u>, 846 F.2d 1009, 1011 (5th Cir. 1988). Conversely, the Supreme Court has specifically found that a constitutional claim for false imprisonment cannot arise from an arrest based on probable cause. <u>Baker v. McCollan</u>, 443 U.S. 137, 143-44 (1979). Therefore, the crucial element in allowing Plaintiff's remaining Fourth Amendment claims to survive summary judgment is whether there remain material facts regarding whether Defendant police officers acted with sufficient probable cause.

While the existence of probable cause is often a question for the jury, summary judgment may nevertheless be appropriate where the undisputed facts are such that no reasonable jury could find for the Plaintiff. <u>Stolinski v. Pennypacker,</u> 772 F.Supp.2d 626, 638 (D.N.J. 2011). The proper inquiry for a finding of a Fourth Amendment violation is "whether the arresting officers had probable cause to believe the person arrested had committed the offense." <u>Dowling v. City of Philadelphia,</u> 855 F.2d at 141. Probable cause will be found where "the facts and circumstances within [an officer's] knowledge and of which [that officer] had reasonably trustworthy information [are]

8

sufficient as of themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." Page, at *23, citing Edwards v. City of Philadelphia, 860 F.2d 568, 571 (3d Cir. 1988)." Moreover, probable cause is a function of information and exigency, with its existence dependent upon "factual and practical considerations of everyday life." Bevier v. Hucal, 806 F.2d 123, 126-127 (7th Cir. 1986). To assess whether a violation of a constitutional right has occurred on a motion for summary judgment, the Court must consider the facts taken in the light most favorable to the non-moving party. Curley v. Klem, 298 F.3d 271,279-80 (3d Cir. 2002).

Plaintiff challenges the presence of probable cause for his arrest on two grounds. First, Plaintiff contends that he did not match the physical description given to the police by the witnesses, and it was therefore unreasonable for the police officers to apprehend him. Second, Plaintiff suggests that the subsequent positive identification at the scene of his apprehension was impermissibly suggestive.

The suspect was described as a dark complexion black male, approximately 5'8" in height, and weighing between 160 to 170 pounds. Plaintiff describes himself as brown skinned, 6'1" in height, and weighing approximately 200 pounds at the time of the arrest. (Pl.'s Statements Refuting Defs. Undisputed Facts and Procedural History, ¶ 4). Plaintiff therefore concludes that he did not sufficiently match the description such that the police officers were reasonable in apprehending him. This Court disagrees. Plaintiff was in close proximity of the vehicle soon after it was stolen and sufficiently matching the description that was relayed to the police officers by dispatch. In addition, the incident and the arrest both occurred at night. In light of the circumstances under which Plaintiff was apprehended, this Court finds that it was not unreasonable for the Police Officers to approach

9

and stop Plaintiff.

Plaintiff next challenges the positive identification given by the witnesses at the scene by claiming that the identification procedure was unnecessarily suggestive and can therefore not serve as the basis for a probable cause determination. The analysis employed to determine whether an identification should be excluded from probable cause analysis is the same as that which is employed for the admission of an identification at trial. See Green v. City of Patterson, 971 F.Supp. 891, 904 n. 8 (D.N.J. 1997). Therefore, to determine whether an identification should be excluded from a probable cause analysis "[t]he question is whether the procedure in question was 'unnecessarily suggestive and conducive to irreparable mistaken identification." Green v. City of Patterson, 971 F.Supp. at 904 (citing Stovall v. Deno, 388 U.S. 293, 302 (1967). Reliability is the linchpin of determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 114 (1977). Reliability is determined by considering whether "under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive." Neil v. Biggers, 409 U.S. 118, 200 (1972). This totality of the circumstances analysis for admitting identifications is guided by the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. Id.

Finally, "[w]hether an identification procedure is 'unnecessarily suggestive' rests not only on its effect, its 'suggestiveness', but also on its cause, whether there was 'some good reason [(or motivation)] for the failure to resort to [a] less suggestive procedure.'" U.S. v. Diaz, 2011 U.S. App.

LEXIS 19270, at *9 (3d Cir. Sept. 16, 2011), citing United States v. Brownlee, 454 F.3d 131, 137 (3d Cir. 2006)(brackets in original).   "A 'show-up' identification may serve the valid purposes of 'allow[ing] identification before the suspect has altered his appearance and while the witness' memory is fresh, and permit[ting] the quick release of innocent persons." Green v. City of Patterson, 971 F.Supp. 891, 904 (D.N.J. 1997).  "Necessary incidents of the on-the-scene identification, such as the suspects being handcuffed and in police custody, do not render the identification procedure impermissibly suggestive."  See U.S. v. Diaz, 2011 U.S. App. LEXIS 19270, at *8, citing United States v. King, 148 F.3d 968, 970 (8th Cir. 1998).  Notably, the Second Circuit has found that handcuffs, custody, and flashlights were all necessary incidents of an on-scene identification, such that they did not render the identification impermissibly suggestive.  see United States v. Bautista, 23 F.3d 726, 730 (2nd Cir. 1994)("[t]he fact that the suspects were handcuffed, in the custody of law enforcement officers, and illuminated by flashlights also did not render the pre-trial identification procedure unnecessarily suggestive.")

Here, the undisputed facts provide that Plaintiff was apprehended by Police in close proximity to the recently stolen vehicle.  Plaintiff was then held at the scene to allow for sufficient time for the witnesses to come and determine whether Plaintiff was in fact the man they identified or whether he was free to go.  Both witnesses had sufficient time to observe the perpetrator, and both expressed certainty that they could positively identify the perpetrator if given the opportunity.  The witnesses then did positively identify the Plaintiff as the perpetrator, and it wasn't until this identification took place that Plaintiff was arrested and taken into police custody.  Finally, a Wade hearing was held regarding the identification at issue in the State's prosecution of Plaintiff.  There,

the Court held that while the identification procedure was suggestive, the identification given by the car's passenger was nonetheless reliable.[10]

Finally, Plaintiff has failed to provide supporting evidence to demonstrate that he is entitled to the relief requested.  See Mordan v. Siegfried, 1995 U.S. Dist. LEXIS 2507, at *9 (E.D.Pa. Feb. 27, 1995) (rejecting defendant's allegations to survive summary judgment without supporting evidence in the record, where the witness identified the perpetrator in state criminal proceedings, and plaintiff made no allegation that defendant had a malicious motive to pressure the eyewitness into identifying the plaintiff).  Plaintiff has failed to produce the testimony of the woman who was accompanying him at the time of the arrest, who was Plaintiff's sole witness and could conceivably provide corroboration for his recollection of the facts.  Additionally, Plaintiff failed to participate in his deposition that was scheduled in this case, invoking his Fifth Amendment right against self-incrimination in light of the ongoing State Court proceedings. While this Court declines to penalize Plaintiff for failure to cooperate with discovery on these grounds, this failure to cooperate has left Plaintiff with a dearth of evidence in support of his claims.  Accordingly, Plaintiff has failed to provide sufficient evidence such that a reasonable jury could find in his favor.

---

[10]This Court also notes the findings of the State Appellate Court  to which Plaintiff's criminal conviction was appealed.  There, Plaintiff raised on appeal his identification, arguing that "because the identification procedure conducted by police on Freeman Avenue was so impermissibly suggestive as to lead to a substantial likelihood of misidentification, and because it irreparably tainted all other identifications made of defendant, all convictions must be reversed." The Appellate Court responded by concluding that based upon their review of the record and the arguments presented by counsel that Plaintiff's challenge to the identification procedure was without sufficient merit to warrant discussion in a written opinion. (Def.'s Mot. Summ. Judg., Ex. A, ECF No. 67-1).

B.    Qualified Immunity

Even if this Court were to find that probable cause did not exist to apprehend and arrest Plaintiff, this would not be the end of the inquiry on summary judgment.  While a lack of probable cause is an element sufficient to establish a Fourth Amendment violation, the presence of a constitutional violation is not enough to strip an officer of immunity from suit.  Rather, in order to overcome a defense of qualified immunity, it must also be shown that the violation was such that "it would have been clear to a reasonable officer that the conduct was unlawful in the situation confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), citing Wilson v. Layne, 526 U.S. 603, 615 (1999).

Qualified immunity is not a mere defense from liability, but "an entitlement not to stand trial or face the other burdens of litigation" such that the immunity is effectively lost if the case is erroneously permitted to go to trial. Curley, 298 F.3d at 277, citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  Qualified immunity exists where "a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." Green v. City of Patterson, 971 F.Supp. at 901, citing Anderson v. Creighton, 483 U.S. 635, 641 (1987).

When the doctrine of qualified immunity is raised on a motion for summary judgment as a defense to alleged deprivations of constitutional rights under § 1983, the Court's analysis must begin with the threshold question of whether "the facts alleged, viewed in the light more favorable to the party asserting the injury, show that the officers conduct violated a constitutional right." Curley, 298 F.3d at 277; Mantz v. Cain, 239 F.Supp.2d 486, 496 (D.N.J. 2002).  If the Plaintiff fails to allege the

13

violation of a constitutional right, no further inquiry is necessary. Curley, 298 F.3d at 277. If, however, the facts alleged are sufficient to demonstrate a constitutional violation, the court must proceed to determine whether the right asserted was 'clearly established' at the time of the officer's allegedly unlawful conduct. Id.  Such analysis requires the Court to consider "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Mantz, 239 F.Supp.2d at 496, citing Saucier v. Katz, 533 U.S. at 194.

While the Supreme Court "has repeatedly stressed the importance of resolving immunity questions at the earliest possible stages of litigation," the Third Circuit has observed that this imperative is frequently "in tension with the reality that factual disputes often need to be resolved before determining whether the defendant's conduct violated a clearly established constitutional right." Curley,198 F.3d at 277 (3d Cir. 2002). Accordingly, summary judgment will not be issued on the grounds of qualified immunity if there remain issues of material fact regarding the reasonableness of the officer's actions. Id.  Reasonableness of an officer's action is a question of law to be decided by the Court. See Carswell v. Borough of Homestead, 381 F.3d 235, 243-44 (3d Cir. 2004).  The existence of disputed historical facts material to the objective reasonableness of an officer's conduct will give rise to a jury issue and summary judgment will not be appropriate. See Curley, 198 F.3d at 278, citing Sharrar v. Felsing, 128 F.3d 810, 828 (3d Cir. 1997), Karnes v. Skrutski, 62 F.3d 485, 499 (3d Cir. 1995).

The first element of the qualified immunity analysis is established here, as it is clearly established that a police officer must have probable cause to arrest an individual. Mordan, 1995 U.S. Dist. LEXIS 2507, at *11.  However, even if there was not probable cause to arrest Plaintiff, the

14

record fails to demonstrate that it would have been clear to a reasonable officer that his conduct was unlawful in the situation here confronted.  Here, the Plaintiff's description was reasonably close to the description provided by the witnesses, he was observed near the stolen vehicle within hours of its theft, and was soon thereafter positively identified by the witnesses to the crime.  The Officers employed necessary incidents to hold Plaintiff at the scene of the apprehension in order to allow for the witnesses to conduct an identification which could have resulted in the immediate release of Plaintiff.  Further, there are sufficient facts to support the conclusion that the identifications, while potentially suggestive, were nevertheless reliable and the Police Officers did not act unreasonable in their reliance on them in finding probable cause to arrest.  Accordingly, it cannot be said that the Defendant Officers acted unreasonably in their apprehension of Plaintiff, nor in their execution of his arrest after the positive identifications.  Defendants are therefore entitled to qualified immunity and their motion for summary judgment is granted.[11]

## IV.   <u>CONCLUSION</u>

For the reasons stated, it is the finding of this Court that Defendants' motion for Summary Judgment is **granted** and Plaintiff's Motion for Summary Judgment is **denied**.  An appropriate Order accompanies this Opinion.


　　　　　　　　　　　　　　　　　　　　 S/ Dennis M. Cavanaugh
　　　　　　　　　　　　　　　　　　　　 Dennis M. Cavanaugh, U.S.D.J.

Date:　　　　　 February　 1　, 2012
Orig.:　　　　　 Clerk
cc:　　　　　　 Hon. Joseph A. Dickson, U.S.M.J.
　　　　　　　　 All Counsel of Record
　　　　　　　　 File

---

[11]Having determined that Defendants are entitled to qualified immunity, this Court does not reach Defendants' remaining claims regarding Plaintiff's failure to cooperate with discovery or collateral estoppel.